IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL ROBINSON, | ) | CASE NO. 1:11CV2533 |
| | ) | |
| Petitioner, | ) | JUDGE CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| STATE OF OHIO, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of Samuel Robinson ("Robinson") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on November 22, 2011. Robinson is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Robinson*, Case No. CR-520748 (Cuyahoga County 2009). For the reasons set forth below, Robinson's petition should be dismissed with prejudice.

I.

The January 2009 term of the Cuyahoga County grand jury indicted Robinson for crimes committed 15 years earlier: one count of aggravated burglary, three counts of rape, three counts of kidnaping, and one count of child endangering. Robinson pleaded not guilty to all charges. The state appellate court reviewing Robinson's conviction

during his direct appeal found the following facts to be relevant to his case:

> {¶ 6} In the early morning hours of November 2, 1994, the victim ("W.V."), [FN4] awoke to a knock at the door of her home on West 30th Street in Cleveland. She heard someone manipulating the lock on her door, so she looked out the window and observed Robinson outside. She then ran to the back room and picked up her year-and-a-half old daughter when Robinson broke into her home. He told her that he needed a change of clothes because he stole a car and he was running from the police. W.V. went to find him some clothes when he entered the room wearing nothing but gloves. She asked him, "What are you doing?" Robinson told her, "You know what I'm here for." He then advised that he was recently released from prison. W.V. was six-months pregnant at the time and asked him why he would do this to her. Robinson replied, "I'm going to do it anyway. It's not the first time that I done it."
>
> FN4. Victims of sexual violence are referred to herein by initials in accordance with this court's established policy regarding nondisclosure of their identities.
>
> {¶ 7} Robinson then performed oral sex on W.V., while her daughter was next to her on the bed. He next vaginally raped W.V. while she laid on her back. After this act, he conversed with her about prison and her boyfriend's and roommate's whereabouts. Robinson then vaginally raped W.V. again. He had her stand up with her leg propped on the bed. Her daughter was crying so Robinson told her to hold the baby and turn her back so he could vaginally rape her from behind.
>
> {¶ 8} Robinson then got dressed and left. He came back a minute later and asked W.V. for a screwdriver and left again. She then put on a robe, grabbed her daughter, and ran to her friend's house. Her friend called an ambulance and W.V. was taken to the hospital, where a rape kit was completed. The Cleveland police met with her at the hospital and took a basic police report.
>
> {¶ 9} Cleveland Police Detective Christina Cottom ("Detective Cottom") of the Sex Crimes and Child Abuse Unit testified that she was assigned to this case when the Ohio Bureau of Criminal Identification and Investigation ("BCI") notified her that Robinson's DNA was linked to the November 1994 rape of W.V. The BCI had a "hit" on Robinson's DNA because of a sample obtained in an unrelated March 2008 rape case. Cottom located W.V. and confirmed that she wanted to proceed with the case. W.V. met with Cottom and gave her a statement. Cottom also showed W.V. a photo array from which she identified Robinson. Cottom included a picture of Robinson in the array because the DNA analysis of the rape kit sample identified Robinson as the perpetrator.

*State v. Robinson*, 2010 WL 4867995, at *1-*2 (Ohio App. Nov. 24, 2010).

Robinson moved *in limine* to suppress the results of the photo array

identification, and the court held a pre-trial hearing regarding Robinson's motion. After hearing evidence, the trial court denied Robinson's motion, finding that Robinson failed to establish that the identification procedure had been unduly suggestive.

Robinson was tried before a jury in October 2009. At the close of the state's case, the court dismissed two counts of kidnaping. The jury found Robinson guilty on the remaining counts against him. The trial court merged the remaining count of kidnaping count with the three counts of rape as allied offenses of similar import. The court then sentenced Robinson to 7 to 25 years' imprisonment for aggravated burglary and to 9 to 25 years' imprisonment on each count of rape, the sentences for rape to be served consecutively to each other and consecutively to the sentence for aggravated burglary. The court also sentenced Robinson to six months for child endangering, to be served concurrently with the counts of aggravated burglary and rape. Finally, the court classified Robinson a Tier III sex offender.

Robinson timely appealed his conviction. Robinson asserted four assignments of error in his appellate brief:

I.  The trial court committed error when it failed to suppress the pretrial identification of appellant.

II.  The trial court committed error when it failed to dismiss the indictment.

III.  The trial court committed error when it failed to merge counts three and four.

IV.  Appellant was denied effective assistance of trial counsel.

On November 24, 2010, the state appellate court overruled all four assignments of error and affirmed the judgment of the trial court.

On December 29, 2010, Robinson filed a notice of appeal in the Ohio Supreme

3

Court.  In his memorandum in support of jurisdiction, Robinson asserted four propositions of law:

> PROPOSITION OF LAW I:
>
> The trial court committed error when it failed to suppress the pretrial identification of appellant thereby violating the appellant's constitutional right to due process under the Fourteenth Amendment to the Constitution of the United States and Article I, Section 16 of the State of Ohio Constitution.
>
> PROPOSITION OF LAW II:
>
> The trial court committed error when it failed to dismiss the indictment, thereby violating the appellant's constitutional right to due process under the Fourteenth Amendment, and the Ex Post Facto Clause under Article I, Section 10 of the United States Constitution, and Article II, Section 28 Ex Post Facto Clause and Article I, Section 16 of the State of Ohio Constitution.
>
> PROPOSITION OF LAW III:
>
> The trial court committed error when it failed to merge counts three & four, misapplying the intention of R.C. 2941.25, as these counts were allied offenses of similar import.
>
> PROPOSITION OF LAW IV:
>
> Appellant was denied his constitutional rights to effective assistance of trial counsel as guaranteed by the Sixth Amendment to the Constitution of the United States and Article I, Section 10 of the Ohio Constitution.

(Capitalization and punctuation altered from the original.)  On March 2, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On November 22, 2011, Robinson filed in this court a petition for a federal writ of habeas corpus.  Robinson asserts four grounds for relief in his petition:

> GROUND ONE:  Failure to suppress pretrial identification.
>
> Supporting Facts:  The trial court committed harmful error when it failed to

suppress an unduly suggestive photo identification acquired during pretrial, thereby violating appellant's constitutional right to due process.

GROUND TWO:  Failure to dismiss the indictment.

Supporting facts:  The trial court erred when it failed to dismiss the indictment when the date of the offenses where committed had exceeded [sic] the statute of limitations.

GROUND THREE:  Failure to merge indictments.

Supporting facts:  The trial erred [sic] when it failed to merge counts 3 & 4 of the indictment, which were allied offenses of similar import.

GROUND FOUR:  Ineffective assistance of counsel.

Supporting facts:  Appellant was denied his constitutional right to effective counsel as he failed to mount a sound defense, neglecting to even present any evidence.

(Capitalization altered from the original.)  Respondent filed an Answer/Return of Writ on May 1, 2012.  Doc. No. 8.  Robinson filed a traverse on June 22, 2012.  Doc. No. 9. Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Robinson. Robinson filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent

5

jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d). Cuyahoga County is within this court's geographic jurisdiction. This court has jurisdiction over Robinson's petition.

Respondent argues, however, that Robinson fails to raise a federal constitutional claim in his third ground for relief. In reviewing the decision of state courts, this court does not consider questions of state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764 (1990); see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Failure to raise a constitutional issue in a ground for habeas relief deprives a court of subject matter jurisdiction over that claim. *See Lambert v. Davis*, 449 F.3d 774, 778-9 (7th Cir. 2006) (citing 2254(a) and *Estelle*); *Thomas v. Rowland*, 990 F.2d 1260 (9th Cir. 1993).

In his third ground for relief, Robinson argues that the trial court erred when it failed to merge counts three and four, thus misapplying Ohio Rev. Code § 2941.25. Whether the Ohio courts erred under state law by failing to merge counts two and three of Robinson's indictment is not a federal issue whose resolution might entitle Robinson to federal habeas relief. Consequently, that issue is beyond the subject matter jurisdiction of this court. For this reason, Robinson's third ground for relief should be dismissed.

B.   *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited

6

circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Robinson's claims involve legal issues that can be independently resolved without additional factual inquiry.

*C.     Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

The exhaustion doctrine is principally designed to protect the state courts' role in

> the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted). Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. § 2254(b)(2).

Robinson has no state remedies available for his claims. Because no state remedies remain available to him, Robinson has exhausted state remedies.

D.   *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the

8

> rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Respondent contends that Robinson has defaulted his second ground for relief. Robinson's second ground for relief asserts that the trial court erred when it failed to dismiss his indictment because the date of the alleged offenses was beyond the relevant statute of limitations. Robinson argues in his traverse that the trial court's application to his case of an extension of the statute of limitations passed after the date of the offenses violated the Ex Post Facto Clause. According to respondent, although Robinson raised the Ex Post Facto argument in the Ohio Supreme Court, he failed to raise that claim in the state appellate court. This, respondent contends, procedurally defaulted the federal claim.

When Robinson argued in the state appellate court the state assignment of error corresponding to his second ground for habeas relief, Robinson did not argue that applying the extension of the statute of limitations to his case violated the Ex Post Facto

Clause.[1]  Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987).  It is rare for the Ohio Supreme Court to reach the merits of claims that were not raised in the underlying appellate proceeding.  Where the state courts are silent as to the reasons for denying a petitioner's due process claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar."  *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  Thus, this court must assume that the Ohio Supreme Court rejected Robinson's claim that the failure to dismiss his indictments violated the Ex Post Facto Clause because he failed to raise that claim in the appellate court.

Ohio's requirement that appellant's raise criminal constitutional questions in the appellate court before raising them in the Ohio Supreme Court is an adequate and independent ground upon which Ohio may rely to foreclose federal habeas review.  *See e.g., Normand v. McAninch*, 2000 WL 377348, *5 (6th Cir. April 6, 2000) ("The Ohio rules requiring appellants to raise claims timely in the appellate court when possible before they can be considered by the state supreme court advance the state's interest in the regularity of criminal convictions and do not implicate federal law.").  Thus, Robinson procedurally defaulted his second ground for relief pursuant to a procedural

---

[1] The only federal law he cited in support of his assignment of error in the state court was *Toussie v. United States*, 397 U.S. 112 (1970), cited for the proposition that "[t]he primary purpose of a criminal statute of limitations is to limit exposure to prosecution to a certain fixed period of time following the occurrence of those acts the General Assembly has decided to punish by criminal sanctions."

10

rule that precludes federal habeas review. Robinson does not demonstrate cause and prejudice for his default, nor does he demonstrate that enforcing the procedural default would result in a fundamental miscarriage of justice. Accordingly, the procedural default should be enforced, and Robinson's second ground for relief should be dismissed.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly

11

> established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Robinson's remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

*A.     Ground one:  Whether the trial court erred in not suppressing the results of the photo array*

Robinson argues in his first ground for relief that the trial court erred in failing to suppress the results of an unduly suggestive photo identification, thus violating Robinson's right to due process.  Respondent denies that the photo array used to identify Robinson was unduly suggestive.

Introducing as evidence the results of an unduly suggestive police identification procedure may violate a defendant's right to due process and require a trial court to suppress that evidence.  *See Foster v. California,* 394 U.S. 440 (1969) (finding that due process required the exclusion of an eyewitness identification obtained through a procedure making identification of the defendant inevitable).  Due process concerns arise, however, only when (1) the identification procedure is arranged by law

12

enforcement officials, (2) the procedure is unnecessarily suggestive, and (3) the procedure creates a substantial likelihood of misidentification. *See Perry v. New Hampshire*, ___ U.S. ___, 132 S. Ct. 716, 724 (2012).  Moreover, even when police use an unduly suggestive procedure, due process does not necessarily require the suppression of the resulting identification: *Manson v. Brathwaite,* 432 U.S. 98, 112-13 (1977).  "Where the 'indicators of [a witness'] ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion, the identification should be suppressed.  Otherwise, the evidence (if admissible in all other respects) should be submitted to the jury." *Id.* (citations omitted).

In the Sixth Circuit, courts use a two-step analysis to decide whether a photo identification has an unacceptable risk of misidentification.  The first step requires the court to determine whether the photo identification was unduly suggestive, which is a fact-specific determination.  *Ledbetter v. Edwards,* 35 F.3d 1062, 1070-71 (6th Cir. 1994).  "The defendant bears the burden of proving this element." *Id.* at 1071.  In making this determination, "the court may consider 'the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves.'" *Id.*  If the court determines that the array was not unduly suggestive, the court need not consider the matter further. *United States v. Stamper,* 2004 WL 422731 (6th Cir. Mar. 3, 2004).

If the court determines that the array was unduly suggestive, the second step of the analysis requires the court to consider whether, under the totality of the circumstances surrounding the identification,  the identification was nevertheless reliable.  The factors considered in making this determination include "the opportunity of

13

the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Perry*, ___ U.S. at ___ n.5, 132 S. Ct. at 724 n.5 (quoting *Brathwaite,* 432 U.S. at 114).  Where "the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." *Perry,* ___ U.S. at ___, 132 S.Ct. at 720.

In the present case, Robinson argues that the photo array by which the victim identified him was unduly suggestive because although the victim described the attacker as having a dark complexion, persons with varying complexions were included in the array.  In addition, the victim also described the attacker as having a tattoo and an upturned nose.  According to Robinson, he was the only individual in the array possessing all three of the characteristics attributed to the attacker.

The state appellate court reviewing the corresponding assignment of error on direct appeal wrote as follows in adjudicating this claim:

> {¶ 13} Robinson first argues that the photo array shown to W.V. was unduly suggestive because the individuals in the photo array have differences in their skin complexion.  W.V. stated that her attacker had a dark complexion, and Robinson asserts that two of the individuals in the photo array were light skinned, African-American males.  Second, he argues that he "stood out like a beacon" because none of the other individuals in the array had an upturned nose as W.V. described to the police.  Third, he complains that the first four photographs depict individuals with layered clothing and the last two photographs depict individuals in shirts.FN5
>
> FN5. Robinson also complains that the photo array was unduly suggestive because W.V. stated that her attacker had a tattoo on his right shoulder and she was not shown photographs of tattooed individuals.  He claims that he does not

14

have a tattoo on his right shoulder. This argument is unpersuasive as the photo array is of facial recognition not tattoo recognition.

The court then correctly described the applicable federal law and continued:

{¶ 17} . . . Robinson failed to establish that the identification procedure was unreasonably suggestive. W.V. viewed the photo array in December 2008, which was 14 years after the offense. In her initial statement to the police, she described Robinson with some specificity. She stated that he had dark skin, a crew cut, an upturned nose, and wore a hooded sweatshirt. At the suppression hearing, Detective Cottom testified that when she assembled the photo array, she used a picture of Robinson that was as close to the date of the crime that she could find. She then used pictures of individuals who have similar features to Robinson, which included his nose, skin complexion, and clothing. When she handed W.V. the photo array, W.V. immediately said "[t]hat's him." She circled Robinson's picture and wrote her name underneath the photo. Because all six photos are of African-American men with facial hair, short hair, and similar build, and the upturned nose could be depicted in any of the photos, we find that the photo array is not unnecessarily suggestive. Therefore, the trial court's denial of Robinson's motion to suppress was proper.

*Robinson*, 2010 WL 4867995 at *2-*3.

Robinson offers no facts or argument in opposition to the findings of the state appellate court. As the state appellate court's statement of the facts is supported by the record[2] and as its statement of the law is correct, its determination of the facts in light of the evidence was reasonable and its decision was in accord with the holdings of the Supreme Court. Consequently, this court must defer to the state appellate court's finding that Robinson failed to prove that the photo array was unduly suggestive. Because Robinson failed to carry his burden of proof with respect to stage one, the court need not proceed to stage two, that is, to consider whether the identification was

---

[2] *See* the photo array attached to the Answer as Exh. 18. *See also* Transcript of Proceedings, Answer, vols. 1-3, pp. 464-81 (testimony of Christina Cottom).

15

nevertheless reliable.[3]

Because the photo array used to obtain an identification of Robinson was not unduly suggestive, the trial court did not violate Robinson's due process rights by admitting that identification as evidence. For this reason, Robinson's first ground for relief should be dismissed.

*B.      Whether Robinson's trial counsel rendered constitutionally ineffective assistance*

Robinson argues that trial counsel was constitutionally ineffective for failing to mount a sound defense and "neglecting to even present any evidence." Respondent replies that Robinson does not prove that his counsel's performance was objectively unreasonable and that, in any case, Robinson was not prejudiced by counsel's performance because the evidence against him was overwhelming.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997). A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result

---

[3] Moreover, as the trial court declined to proceed to the second stage of the analysis, for this court to advance to the second stage would require it to examine the issue *de novo*.

16

unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's

17

> performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Determining whether counsel was ineffective is a mixed question of law and fact. *See Williams*, 529 U.S. 362. When a federal court reviews the conclusions of a state court regarding counsel's alleged ineffectiveness, both the legal and the factual tests for determining whether habeas relief is warranted are brought into play. *Id.* at 395-96. The reviewing court must determine whether the decision of the state court regarding counsel's alleged ineffectiveness (1) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and (2) resulted in a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court. *Id.*

The state appellate court reviewing Robinson's claim of ineffective assistance of counsel on direct appeal correctly summarized the *Strickland* standard for determining ineffective assistance of counsel and then wrote as follows:

> {¶ 31} In the instant case, almost 15 years passed since the date of the crime and the time of trial.  Additionally, the DNA evidence identified Robinson as the perpetrator.FN6  Other than Robinson's blanket assertion that defense counsel failed to present any evidence, Robinson offers nothing to rebut the presumption that counsel's actions were the product of a sound trial strategy.  See *State v. Williams,* Cuyahoga App. Nos. 92009 and 92010, 2009-Ohio-5553, ¶ 47.  He fails to assert which witnesses he wanted to testify or what other evidence he wished to present. There are numerous ways to provide effective assistance of counsel, and debatable trial tactics and strategies do not constitute a denial of that assistance.  *State v. Wright,* Cuyahoga App. No. 92344, 2009-Ohio-5229, ¶ 45, citing *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189.  Therefore, we decline to find that Robinson's trial counsel rendered ineffective assistance of counsel.
>
> FN6. The DNA results revealed that there is a 1 in 49 quintillion, 380 quadrillion chance that the DNA sample does not belong to Robinson.

*Robinson*, 2010 WL 4867995 at *5.  In his habeas petition, Robinson again fails to explain what witnesses and other evidence trial counsel should have presented as a defense.  Thus, Robinson does nothing to rebut the presumption that counsel rendered effective assistance.

Robinson offers no facts or argument in opposition to the findings of the state appellate court.  As the state appellate court's statement of the law is in accord with the holdings of the Supreme Court and its statement of the facts unchallenged, its conclusion that Robinson's counsel did not render ineffective assistance is entirely reasonable and entitled to this court's deference.  Accordingly, Robinson's fourth ground for relief should be dismissed as without merit.

IV.

For the reasons given above, Robinson's third ground for relief should be dismissed as beyond this court's subject matter jurisdiction, his second ground for relief dismissed as procedurally defaulted, and his first and fourth grounds for relief dismissed as without merit.  Thus, Robinson's petition should be dismissed with prejudice in its entirety.

Date:  September 27, 2012  /s/ *Nancy A. Vecchiarelli*
United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**